[Civ. No. 25669. Fourth Dist., Div. Two. Aug. 11, 1981.]

PHILLIP LUCERO, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Adrian Smeltzer and Chuck Nacsin for Petitioner.

No appearance for Respondent.

Dennis Kottmeier, District Attorney, and Joseph A. Burns, Deputy District Attorney, for Real Party in Interest.

OPINION

KAUFMAN, J.—Petitioner Phillip Lucero is the defendant in criminal case No. Cr-36822 in the San Bernardino Superior Court in which he is charged by information with two counts of murder (Pen. Code, § 187) together with a special circumstance, multiple homicides, and one count of arson (Pen. Code, § 451, subd. (c)). The People seek the death penalty.

Petitioner was arraigned on the information on July 25, 1980. On February 2, 1981, his court-appointed counsel moved under Penal Code

section 987.9[1] for an authorization of $23,015 to be expended in conducting a survey of randomly selected persons to be utilized by counsel in connection with a motion for change of venue to be made on the ground of prejudicial pretrial publicity.

The motion was denied and a petition for writ of mandate and stay order was filed in this court on February 24. We denied the petition without opinion. A petition for hearing in the Supreme Court was denied on March 25.[2]

Meanwhile, on March 6, 1981, petitioner began presentation of his motion for change of venue based on alleged prejudicial pretrial publicity. After the presentation of evidence and argument, the motion for change of venue was denied on March 18. A request for a stay was denied, and the court indicated its firm intention of commencing trial March 30. Over petitioner's objection that one of his two attorneys was engaged in trial of another case and could not be present, trial did commence on March 30 or March 31 with *Witherspoon* voir dire of prospective jurors, and the *Witherspoon* voir dire had been under way approximately one week when petitioner filed his petition for writ of mandate and prohibition and a stay order in this court on April 6, 1981. We denied the petition without opinion. However, on April 17, 1981, the Supreme Court issued an order staying further trial proceedings, and on April 30, 1981, granted hearing and retransferred the matter to this court with directions to issue an alternative writ of mandate and/or prohibition. The stay order theretofore made was ordered to remain in effect pending final determination of this proceeding. Pursuant to the Supreme Court order we issued an alternative writ of mandate to which the People have filed a return. Petitioner has filed a reply.

---

[1]That section reads in pertinent part: "In the trial of a capital case the indigent defendant, through his counsel, may request the court for funds for the specific payment of investigators, experts, and others for the preparation or presentation of the defense. The application for such funds shall be by affidavit and shall specify that the funds are reasonably necessary for the preparation or presentation of the defense. The fact that such an application has been made shall be confidential and the contents of the application shall be confidential. Upon receipt of such application, a judge of the court, other than the trial judge presiding over the capital case in question, shall rule on the reasonableness of the request and shall disburse an appropriate amount of money to defendant's attorney. The ruling on the reasonableness of the request shall be made at an in camera hearing. In making such a ruling, the court shall be guided by the need to provide a complete and full defense for the defendant."

[2]The Supreme Court's order filed March 25, 1981, recited: "Bird, C. J., and Tobriner, J., are of the opinion that the petition should be denied without prejudice to petitioner's right to seek relief from the venue ruling."

The questions petitioner seeks to raise, although stated somewhat differently by him, are whether the trial court abused judicial discretion in denying his motion for change of venue and whether the court abused its discretion or denied petitioner due process of law by denying his motion for funds with which to conduct a survey. We have concluded that the answer to each question is no. Accordingly, we deny the peremptory writ.

### Funds for a Survey

█ Petitioner cannot possibly prevail on this issue because he has not provided the court a record that will permit meaningful review of the court's order. (*Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 156 [143 Cal.Rptr. 450].) Penal Code section 987.9 under which the request for funds was made provides that the application shall be made by affidavit specifying that the funds are reasonably necessary for the preparation or presentation of the defense and that the court shall rule on the reasonableness of the request. (See fn. 1, *ante.*) The determination obviously requires the exercise of judicial discretion guided by, in the words of the statute, "the need to provide a complete and full defense for the defendant." However, abuse of discretion is not to be presumed; "'[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193], italics in original; *Lemelle* v. *Superior Court, supra.*) The record in the case at bench does not include a copy of the notice of motion nor of any declaration filed in support of the motion. We really have nothing to review. On this record a determination that the trial court abused its discretion would necessarily be based upon rank speculation.

From what does appear we conclude that the trial court acted with propriety in denying the motion. The trial court felt that such a survey would be wholly inconclusive and an injudicious expenditure of public funds. We agree, particularly in view of the fact that the motion for change of venue had not yet been made, so that the trial court was in no position to know whether the case was even close. We can conceive of a case in which the basic presentation in support of a motion for change of venue on grounds of prejudicial pretrial publicity might make the allocation of funds for such a survey reasonable, but the expenditure

of more than $23,000 for such a survey on a wholly speculative basis would be improvident in the extreme.

■ For the same reasons, we unhesitatingly conclude that the denial of petitioner's motion for survey funds did not constitute a denial of his right to due process or any other constitutional right. The right to effective counsel does include the right of an indigent to have funds allocated for investigative services, but only for *necessary* investigative services. (*Puett* v. *Superior Court* (1979) 96 Cal.App.3d 936, 938-939 [158 Cal.Rptr. 266]; *People* v. *Faxel* (1979) 91 Cal.App.3d 327, 330 [154 Cal.Rptr. 132]; *Mason* v. *State of Arizona* (9th Cir. 1974) 504 F.2d 1345, 1352.) So far as the record discloses, no showing of reasonable necessity was made by petitioner.

### Change of Venue

The background facts are that on April 12, 1980, in the City of Yucaipa in San Bernardino County two young girls disappeared while on their way to a local park between the hours of 4:30 and 5 p.m. Sometime between the hours of 6:30 and 7 p.m. the same day a fire was reported at the home of petitioner. While firemen were attempting to extinguish the fire one of them noticed what was believed to be blood on petitioner's living room rug. This observation was reported to San Bernardino County sheriff's deputies who were on the scene.

At approximately 9 p.m. on that evening, the bodies of the two girls were discovered inside a trash dumpster several miles from petitioner's residence. Each body had been placed in a trash bag. Petitioner's house was located directly across the street from the park where the two girls were going at the time they disappeared.

As a result of the sequence of events and petitioner's unsatisfactory explanation of how blood got on his living room rug, petitioner was voluntarily transported to the Yucaipa substation for questioning. He denied any knowledge about the girls. Subsequently blood was discovered on the lid of and inside petitioner's automobile trunk and on his clothing. As a result of these findings, petitioner was arrested and charged with the murder of the two girls.

Not surprisingly, there was news coverage of the girls' disappearance, the discovery of their bodies, the fire at petitioner's home and petitioner's arrest. The news coverage was most intense in April 1980, but there

was also some coverage in May and in June and July at the time of petitioner's preliminary hearing. In addition, one radio station broadcast some news concerning the case on December 30, 1980, and the San Bernardino Sun newspaper published one article in March 1981.

In support of the motion for change of venue, petitioner presented to the court copies of the newspaper articles, typewritten sheets from which the radio broadcasts were made, some television scripts and approximately 40 minutes of video tape pertaining to the incidents which petitioner obtained from 5 television stations based in Los Angeles. However, no evidence was presented as to which portions of the television tape were actually televised or of the actual content of the radio and television broadcasts about the case or the times or frequency of any such airings or broadcasts or the size, location or composition of any audience that viewed or probably viewed the broadcasts or airings.

Also presented by petitioner in support of the motion for change of venue was a petition containing approximately 7,000 signatures from persons in the Yucaipa, Calimesa and Redlands area requesting that the park across the street from petitioner's home be renamed in the victims' honor as a memorial park.

■ The law governing motions for change of venue on the ground of prejudicial pretrial publicity is well established and uncomplicated. A change of venue must be granted when the defendant shows a reasonable likelihood that a fair trial cannot be had in the county of original venue. (*People* v. *Harris* (1981) 28 Cal.3d 935, 948 [171 Cal.Rptr. 679, 623 P.2d 240]; *Frazier* v. *Superior Court* (1971) 5 Cal.3d 287, 294 [95 Cal.Rptr. 798, 486 P.2d 694]; *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383 [66 Cal.Rptr. 724, 438 P.2d 372].) Whether raised on a petition for writ of mandate or on appeal from a judgment of conviction, the reviewing court must independently examine the record and determine de novo whether a fair trial could be or was obtainable. (*People* v. *Harris, supra*; *People* v. *Welch* (1972) 8 Cal.3d 106, 113 [104 Cal.Rptr. 217, 501 P.2d 225]; *Maine* v. *Superior Court, supra*, 68 Cal.2d at p. 382.) The factors generally considered are the nature and gravity of the offense, the nature and extent of the news coverage, the size of the community, the status of the defendant in the community and the popularity and prominence of the victim. (*People* v. *Harris, supra*; *People* v. *Salas* (1972) 7 Cal.3d 812, 818 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832].) Another highly significant factor where it exists is a demonstration by voir dire of the jury or prospective jurors

that the pretrial publicity had no prejudicial effect. (*People* v. *Harris, supra*, 28 Cal.3d at p. 949; see *Murphy* v. *Florida* (1975) 421 U.S. 794, 800-802 [44 L.Ed.2d 589, 594-596, 95 S.Ct. 2031].) It is also significant whether or not any effect from the pretrial publicity has been dissipated by the passage of time. (See, e.g., *People* v. *Welch, supra*, 8 Cal.3d at pp. 113-114.)

The trial court determined that the showing made by petitioner disclosed no reasonable likelihood that a fair trial could not be had in San Bernardino County. Exercising our duty to make an independent evaluation, we reach the same conclusion. We consider each of the factors generally regarded as significant.

■ The gravity of the offense and its nature are obviously factors supporting the request for change of venue. However, the nature and extent of the publicity are not. The extent of the publicity was appreciable, but not out of proportion to what might be expected given the nature and gravity of the offense. Actually, the coverage was quite factual in nature given the emotional possibilities. Defense counsel were interviewed as well as the prosecutor and members of the victims' families. Of course, evidentiary items were mentioned in the news coverage, but petitioner has not brought to our attention a single item of evidence referred to in the news coverage that will be inadmissible at trial. No admissions or confession on the part of the petitioner were alluded to. The fact that the prosecution would seek the death penalty was, of course, brought out. However, that was nothing the jurors would not learn in the first few minutes of voir dire. In sum, the news coverage was not inflammatory.

The size of the community argues very much against changing venue. Petitioner himself through counsel estimated that San Bernardino County had at the time a population of from 600,000 to 750,000 persons excluding residents of the desert area, and, of course, San Bernardino County is the largest county geographically in the territorial United States. The Yucaipa-Redlands-Calimesa area constitutes one medium-sized population center within San Bernardino County but the San Bernardino-Colton-Rialto area is considerably larger and there are several other major population centers as many as 40 to 60 miles away in the Ontario-Upland-Chino area and the Victorville-Apple Valley-Lucerne Valley-Hesperia area.

Petitioner had no particular status in the community, and the victims were virtually unknown prior to their deaths. Of course, their deaths

evoked a good deal of public sympathy as was evident from the petition to rename the park in their honor.

The final two factors are somewhat related and are dispositive in our view. Except for a couple of news items, a radio broadcast in December 1980 and a newspaper article in March 1981, it was eight to nine months after the last significant pretrial publicity that the motion for change of venue came on for hearing. Even assuming that some significant number of persons within the county originally became aware of the pretrial publicity, the passage of eight or nine months time would substantially dissipate any possible prejudicial effect. And because of the somewhat unique circumstance that voir dire of the jury had proceeded for about two and half weeks before the Supreme Court issued its stay order, we have concrete evidence that the pretrial publicity did not result in so prejudicing the public that there was a reasonable possibility that petitioner could not be afforded a fair trial in San Bernardino County. During the two-and-half-week period in which prospective jurors were voir dired, some 75 persons were questioned by the court and counsel concerning the impact upon them of the pretrial news media coverage of the case. Forty-nine of the seventy-five had no recollection of the coverage; twenty-four others recalled some news coverage, but declared that it would not affect their deliberations; only two stated that they would be affected by the coverage.

We conclude that the trial court did not abuse its discretion in denying the motion for change of venue and that there is no reasonable possibility that petitioner cannot be afforded a fair trial in San Bernardino County.

## Disposition

Accordingly, the petition for a peremptory writ is denied. The alternative writ, having served its function, is discharged. The stay order of the Supreme Court will automatically terminate upon finality of this decision.

Gardner, P. J., and Morris, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied October 7, 1981. Bird, C. J., and Kaus, J., were of the opinion that the application should be granted.